**INTER OCEAN FREE ZONE, INC., Plaintiff,**

v.

**UNITED STATES CUSTOMS SERVICE, Defendant.**

No. 97–618–CIV.

United States District Court, S.D. Florida.

Oct. 27, 1997.

868

Michael Zelman, Coral Gables, FL, for Plaintiff.

Carole M. Fernandez, Asst. U.S. Atty., Office of the U.S. Attorney, Southern District of Florida, Miami, FL, for Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Plaintiff Inter Ocean's Motion for Summary Judgement; and Defendant's Motion for Summary Judgment, both filed August 13, 1997. For the reasons set forth below, summary judgment is granted in favor of the defendant.

## PROCEDURAL BACKGROUND

On March 12, 1997, Plaintiff Inter Ocean Free Zone, Inc. ("Inter Ocean") filed its Complaint for Declaratory and Injunctive Relief, seeking production of certain customs forms submitted by non-party Japan Electronics, Inc. ("Japan Electronics"). On April 21, 1997, Defendant United States Customs Service ("Customs") filed and served its answer, asserting that the forms in question are exempt from disclosure. Thereafter, pursuant to this Court's Order, Customs submitted the contested forms for *in camera* review. Currently, both parties move for summary judgment.

## STANDARD OF REVIEW

In deciding a summary judgment motion, a court must apply the standard stated in *Fed. R.Civ.P.* 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In applying this standard, the Eleventh Circuit has stated that:

> The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant.

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982) (citations omitted); *see also Tisdale v. United States,* 62 F.3d 1367, 1370 (11th Cir.1995). Moreover, "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R.R. Co.,* 320 U.S. 476, 479–480 [64 S.Ct. 232, 234–235, 88 L.Ed. 239] (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512.

## FACTUAL BACKGROUND

In a letter dated January 2, 1997, Inter Ocean made a request, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to Customs in Pharr, Texas, for all Customs Forms 1512 that had been submitted by Japan Electronics, from April 1, 1995, to April 30, 1996. *August 13, 1997, Affidavit of Sinecio Gutierrez; Declaration of Marvin Amernick,* pp. 1–2.

2. The documents Inter Ocean seeks are "entry documents" required to be submitted by importers and/or consignees who import merchandise into the United States. 19 U.S.C. § 1485. They contain information including the identification of the manufacturer and shipper, description of merchandise, in-

cluding its quantity and value, and other commercial information concerning the importation of goods. Brokers, freight forwarders, consolidators and other agents are identified in the forms.

3. Customs has traditionally regarded these forms as confidential commercial information due to the nature of the information contained in the forms.

4. Customs conducted a search for the requested forms, and located and sorted them into categories. *Amernick Decl.*, ¶ 6. As noted above, these Forms 1512 were provided to this Court for *in camera* review. This Court has made such review of each form.

a. The first category of records located by the search are those Forms 1512 that identify Japan Electronics as the importer of record. Inter Ocean is not named in any of these forms.

b. The second category of records are those Forms 1512 wherein Japan Electronics is listed as the consignee. Inter Ocean is not named in any of these forms.

c. The third category of records are those Forms 1512 that identify Inter Ocean as the importer of record. In each of the records in this last category, Japan Electronics is listed as the consignee.[1]

5. Japan Electronics was advised of Inter Ocean's request and of the pending action In a June 6, 1997, letter Japan Electronics objected to the disclosure of the Forms 1512, asserting that the information requested was "both commercial financial and competitive sensitive information" and that such disclosure "could likely result in possible competitive harm." *Amernick Decl.*, ¶ 10; *Affidavit of Pishu (Richard) Chatlani*, p. 2.

6. More specifically, Japan Electronics provided an affidavit to Customs outlining how and why release of the forms would likely result in competitive harm. Among other things, Japan Electronics has asserted, and has filed a separate suit against Inter

Ocean alleging, that Inter Ocean conspired to do business directly with Japan Electronics' customers, thereby depriving it of brokerage fees, and that Inter Ocean, through its statements and actions, has caused injury to the Japan Electronics' business reputation and business relationships. *Chatlani Aff.*, pp. 1–2.

7. Based on these objections, Customs determined that the Japan Electronics' Forms 1512 contain commercial and financial information that is "privileged and confidential" in that the release of this information would likely cause substantial competitive harm to Japan Electronics. *Amernick Decl.*, ¶¶ 11, 12, 14; Hence, Customs asserts that the forms are exempt from disclosure under FOIA Section 552(b)(4) ("Exemption Four"). *Amernick Decl.*, ¶ 11.

8. Pursuant to Exemption Four, Customs denied Inter Ocean's request for the Forms 1512 submitted by Japan Electronics.

9. Inter Ocean contends that Japan Electronics is not entitled to the protection afforded by Exemption Four because it is no longer in business.

10. In support of its contention that Japan Electronics is no longer in business, Inter Ocean submitted a private investigator's affidavit, stating that the phone number for Japan Electronics is not in service, its principle place of business is being used by another entity, and the address for its corporate registered agent is a vacant padlocked building. *July 11, 1997, Affidavit of Sinecio Gutierrez*, pp. 1–2.

11. In response to Inter Ocean's assertion that Japan Electronics is not in business, Customs submitted an affidavit from Japan Electronics' manager, Pishu (Richard) Chatlani ("Chatlani"). He states that although Japan Electronics has had to scale back its operations, it is in business and maintains a current post office box in McAllen, Texas. *Chatlani Aff.*, p. 1. He further asserts that Japan Electronics is an "active corporation,

---

[1]. The Court notes that the Forms 1512 in the third category were submitted to Customs by Inter Ocean and not Japan Electronics. Hence, they are not responsive to the instant FOIA request. Therefore, the third category of documents located by Customs' search and submitted to this Court for *in camera* review shall not be released to Inter Ocean pursuant to the instant FOIA request.

and [ ] is current on all of it's [sic] corporate franchise taxes." *Chatlani Aff.,* p. 1.

## DISCUSSION

■ The Freedom of Information Act ("FOIA") was enacted to inform the public about "what [its] government is up to." *U.S. Dep't of Justice v. Reporters Committee,* 489 U.S. 749, 772–75, 109 S.Ct. 1468, 1481–83, 103 L.Ed.2d 774 (1989). However, FOIA "is not a discovery statute." *Johnson v. U.S. Dep't of Justice,* 758 F.Supp. 2, 5 (D.D.C.1991), *citing Reporters Committee.* The identity of the FOIA requester and the requester's reasons for making the request have no bearing upon its entitlement to the information. *Reporters Committee,* 489 U.S. at 771, 109 S.Ct. at 1480–81. Thus, with limited exception, what is given to one requester is what is available to all who make the same request.[2]

■ Information is withheld from requesters pursuant to exemptions set forth in FOIA. These exemptions are to be narrowly construed, but were intended by Congress "to have meaningful reach and application." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989). In enacting the exemptions, Congress intended to preserve confidentiality in certain necessary situations. *See, FAA v. Robertson,* 422 U.S. 255, 262, 95 S.Ct. 2140, 2146, 45 L.Ed.2d 164 (1975); *accord, FBI v. Abramson,* 456 U.S. 615, 631–32, 102 S.Ct. 2054, 2064–65, 72 L.Ed.2d 376 (1982); *Church of Scientology v. United States Dep't of Justice,* 612 F.2d 417, 426 (9th Cir.1979).

### A. Burden of Proof

■ In FOIA litigation the government has the burden of proving that an exemption was properly invoked in its decision to withhold information. *Ely v. FBI,* 781 F.2d 1487, 1489–90 (11th Cir.1986). That burden is met where the agency demonstrates that it has logically applied FOIA exemptions and where there is not contradictory evidence in the record or evidence of agency bad faith.

*See Hayden v. NSA/CSS,* 608 F.2d 1381, 1387 (D.C.Cir.1979); *Hemenway v. Hughes,* 601 F.Supp. 1002, 1004 (D.D.C.1985); *see also Halperin v. CIA,* 629 F.2d 144, 148 (D.C.Cir.1980); *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981)

### B. Exemption Four

Exemption Four, 5 U.S.C. § 552(b)(4), the exemption at issue here, protects from disclosure (1) "trade secrets" and "commercial or financial information"; (2) that is obtained from a person; and (3) is "privileged or confidential." *See, Hustead v. Norwood,* 529 F.Supp. 323, 326 (S.D.Fla.1981). In the instant case, there is no dispute that the requested Forms 1512 contain "commercial or financial information." In addition, there is no dispute that Japan Electronics is a "person" within the meaning of 5 U.S.C. § 551(2) (defining "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency"). Therefore the issue that remains to be resolved by this Court is whether the information sought by Inter Ocean is "privileged or confidential."

■ There is a two-part test to determine whether information is "privileged or confidential" for the purposes of Exemption Four. *See Continental Oil Co. v. FPC,* 519 F.2d 31, 35 (5th Cir.1975); *Continental Stock Transfer & Trust Co. v. SEC,* 566 F.2d 373, 375 (2d Cir.1977); *National Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir. 1974). Under this test, in order to be deemed "confidential" the information sought must have the effect of either (1) impairing the government's ability to obtain necessary information in the future, or (2) "causing substantial harm to the competitive position of the person from whom the information was obtained." *Continental Stock,* 566 F.2d at 375. As there is no dispute that the first prong of this test does not apply to the instant action,[3] this Court addresses only the second prong.

---

2. The exception is where the objection to disclosure is based on a claim of privilege and the requester is the party protected by the privilege. *Reporters Committee,* 489 U.S. at 771, 109 S.Ct. at 1480–81.

3. Moreover, there can be no reasonable concern that those who are required by statute to submit Forms 1512 will risk violating the law, thereby impairing the government's ability to obtain necessary information. *See e.g. Worthington Com-*

■ In order to withhold information under the competitive harm prong of this test, Customs must show that there is (1) actual competition and (2) a likelihood of substantial competitive harm. *See Worthington Compressors, Inc. v. Costle,* 662 F.2d 45, 51 (D.C.Cir.1981). With regard to the second of these elements, the likelihood of substantial competitive harm:

> [n]o actual adverse effect on competition need be shown, nor could it be, for the requested documents have not been released. The court need only exercise its judgment in view of the nature of the material sought and competitive circumstances in which the [submitter does] business.

*National Parks & Conservation Ass'n v. Kleppe,* 547 F.2d 673, 675 (D.C.Cir.1976); *accord Miami Herald Pub. Co. v. United States SBA,* 670 F.2d 610, 614 (5th Cir. Unit B 1982).

■ As noted above, Inter Ocean contends that Japan electronics is not "in business" and, therefore, is not in actual competition and risks no likelihood of any competitive harm. In support of this assertion, Inter Ocean submitted an affidavit from a private investigator. As noted above, the private investigator states that Japan Electronics' phone number is not in service; its principle place of business is being used by another entity; and the address for its corporate registered agent is a vacant padlocked building. From these bare, albeit undisputed, facts Inter Ocean concludes that Japan Electronics (1) is no longer in business and (2) cannot suffer competitive harm.

■ The Court, however, notes that these facts alone are insufficient to raise a question of material fact as to the issue of whether Japan Electronics is in actual competition and would likely suffer substantial competitive harm if the requested information were released. Japan Electronics' admittedly weakened financial position does not amount to a complete inability to suffer competitive harm. *See e.g. Nadler v. Federal Deposit*

*Ins. Corp.,* 899 F.Supp. 158, 164 (S.D.N.Y. 1995) (determining that a company in receivership was entitled to the protection of Exemption Four). One purpose underlying Exemption Four is the protection of the rights of those who are obliged to provide information to the government. *National Parks,* 498 F.2d at 769. A struggling, perhaps even failing, business remains entitled to the protections that Exemption Four affords to any company.

The information withheld in this case is similar to that withheld in *Timken Co. v. U.S. Customs Service,* 491 F.Supp. 557 (D.D.C.1980) and *Timken Co. v. U.S. Customs Service,* 531 F.Supp. 194 (D.D.C.1981). In those cases the court upheld the withholding, under Exemption Four, of Customs documents related to valuation of imported merchandise and assessment of customs duties. The court determined that disclosure of information such as the value determinations by Customs of imported goods, invoice unit prices and total invoice prices, quantities sold at home and for export, and calculated customs duty amounts would likely result in substantial competitive harm. Also, the court recognized that disclosure of confidential arrangements with customers is likely to give rise to objections from customers and disruption of customer relationships.

Those same considerations apply in the instant action. Moreover, as outlined above, in the instant case, Japan Electronics claims that Inter Ocean has conspired to do business directly with Japan Electronics' customers, thereby depriving it of brokerage fees.[4] Therefore, for this reason and the reasons outlined above, this court finds that the Forms 1512 that are responsive to Inter Ocean's FOIA request, were properly withheld under Exemption Four.

## CONCLUSION

The Forms 1512 withheld in this case contain information compelled to be submitted to the government that qualifies as confidential under the competitive harm standard estab-

---

*pressors, Inc. v. Costle,* 662 F.2d 45, 51 (D.C.Cir. 1981).

4. The accuracy of this allegation is the subject matter of a cause of action pending before another court. Accordingly, this Court makes no findings as to the truth or falsity of that allegation.

lished by *National Parks* and subsequent decisions. Based on the objections stated by Japan Electronics and the nature of the information contained in the forms, and in consideration of the cases cited above, Customs had a reasonable basis for concluding that the Forms 1512, which fall within the first and second categories described above, are exempt from disclosure under Exemption Four.[5] Accordingly, this Court finds that Customs has logically, properly, and in good faith applied Exemption Four to withhold production of the requested records. Therefore, for the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment, filed August 13, 1997, is GRANTED. It is further

ORDERED AND ADJUDGED that, pursuant to Rule 58 of the Federal Rules of Civil Procedure, Summary Final Judgment shall be entered by a separate order.

---

**5.** This Court determined that the documents in category three were not responsive to Inter

 Ocean's FOIA request.